IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE PRATER, | ) | Case No. 3:19-cv-19 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| BARRY R. SMITH, KENNETH | ) | |
| HOLLIBAUGH, DAVID CLOSE, | ) | |
| REBECCA REIFER, MICHELL IVICIC, | ) | |
| JANET PEARSON, DR. MUHAMMAD | ) | |
| NAJI, JOSEPH H. DUPONT, JOSEPH J. | ) | |
| SILVA, ADREN SMITH, FREDDY | ) | |
| NUNEZ, DORINA VARNER, KERI | ) | |
| MOORE, JOEL BARROWS, K. SHEA, T. | ) | |
| KNOWLES, CO 1 MOONEY, C.O. KELLY, | ) | |
| CHIEF JAMES, PEGGY BARNS, | ) | |
| ELIZABETH JURY, RICHARD OR RICH, | ) | |
| DAREN GINTER, WILLIAM NORVELL, | ) | |
| POBORSKI, LARUE, G. COGAN, | ) | |
| DUFORE, FLORA, MR. MAINES, and | ) | |
| LONG, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

I.    **Introduction**

This matter is before Magistrate Judge Keith A. Pesto (the "Magistrate Judge") for pretrial

proceedings in accordance with the Magistrates Act, 28 U.S.C. § 636, and Local Civil Rule 72.

Pending before the Court are two filings by pro se Plaintiff Wayne Prater ("Prater"), both

of which object to previous Orders entered by the Magistrate Judge in this matter. (ECF Nos. 20,

27). Prater's filings primarily focus on two of the Magistrate Judge's Orders: (1) an Order denying

Prater's Motion for Leave to Proceed In Forma Pauperis ("IFP"), and (2) a subsequent Order

dismissing Prater's Complaint for failure to prosecute—i.e., failure to pay the filing fee required for litigants who are not proceeding IFP. (ECF Nos. 2, 3). Prater also objects to the Magistrate Judge's Order denying his recent Motion to Appoint Counsel. (ECF Nos. 26, 27).

For the following reasons, the Court will: (1) reconsider the Magistrate Judge's Order denying Prater's Motion to Proceed IFP *sua sponte* and **REVERSE** in part and **AFFIRM** in part the Magistrate Judge's Order at ECF No. 2; (2) **GRANT** Prater's objections to the Magistrate Judge's Order dismissing his Complaint, insofar as he objects to the Magistrate Judge dismissing his Complaint for failure to pay the filing fee, and therefore **REVERSE** the Magistrate Judge's Order at ECF No. 3; and (3) **DENY** Prater's objections to the Magistrate Judge's Order denying his Motion for Appointment of Counsel and **AFFIRM** the Magistrate Judge's denial of that Motion at ECF No. 26 pursuant to Local Civil Rule 10(C).

## II.     Background

Prater filed a "Motion and Declaration in Support of Motion to Proceed [IFP]" on February 6, 2019.[1] (ECF No. 1). In that Motion, Prater avers that he receives prison wages "under $15" and, at the time of the Motion's filing, had only $26.56 in his account at State Correctional Institute Houtzdale ("SCI Houtzdale"), where he was and remains detained. (*Id.* at 1–2). The Motion included myriad exhibits, including a copy of the Complaint Prater intended to file were his Motion granted. (ECF No. 1-3).

---

[1] Prater's Motion was docketed on February 7, 2019. (ECF No. 4). But, under "[t]he federal 'prisoner mailbox rule[,]' … a document is deemed filed on the date it is given to prison officials for mailing." *Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011) (citing *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998)). Each of Prater's filings includes an envelope, which contains a date indicating when Prater mailed the filing from the facility at which he is incarcerated. Accordingly, throughout this Opinion, when the Court states that Prater "filed" a document on a certain date, it is referring to the date Prater mailed said filing to the Court, not the date the filing was ultimately docketed.

A.      Prater's Complaint

Prater's Complaint first focuses on his attempts to contact his biological children while incarcerated at SCI Houtzdale. He alleges that he was called to the prison's security office by Defendant Captain K. Shea on May 23, 2016, where he made Defendant Shea aware that "he had a standing court order[.]" (*Id.* at 4). The court order to which Prater refers, attached as an exhibit to his Complaint, comes from the Court of Common Pleas of Philadelphia County ("Court of Common Pleas") Family Court Division. (ECF No. 1-7). That order grants sole physical and legal custody of Prater's children to their mother, but explains that "telephone contact between [the] father [Prater] and the two younger children may occur at [the] mother's discretion[.]" (*Id.*).

Prater's Complaint also attaches a document from SCI Houtzdale that states that Prater "was given an order that he is to cease all communications with" his biological children. (ECF No. 1-6). On that document, next to his signature, Prater wrote that he has a "court order stating that [he] can contact [his] children." (*Id.*). By Prater's telling, even after making Defendant Shea and others aware of the court order that Prater purports allows him to speak to his children, nobody (including Defendant Shea) requested to see the court order. (ECF No. 1-3 at 4).

The Complaint next alleges that Prater "received a new temporary [] order that was served by Clearfield County Sh[e]riffs Office at SCI Houtzdale" on July 18, 2016. (*Id.*). That order, again from the Court of Common Pleas, grants a Petition for Protection from Abuse filed by Yvette L. Mason ("Mason"), the mother of Prater's children, against Prater. (ECF No. 1-8). Generally speaking, the order prohibits Prater from abusing, stalking, harassing, threatening, or having any contact with Mason. (*Id.*).

Prater filed a grievance on July 18, 2016, which he attached to his Complaint and "submit[s] as evidence of the ongoing campaign of retaliation and harassment." (ECF No. 1-3 at 4). The grievance was filed against Defendant Cogan, a unit counselor at SCI Houtzdale, and complains of alleged "disrespectful and unprofessional conduct" by Defendant Cogan when Prater "addressed the issue of" recent court documents he received. (ECF No. 1-9). Specifically, Prater alleges in the grievance that Defendant Cogan used expletives and slammed the office door in his face after he informed Defendant Cogan that she did not have to read the entirety of the court documents he provided her. (*Id.*).

Next, Prater's Complaint alleges that he received a "misconduct" from Defendant Lieutenant Mooney on July 21, 2016, because Prater wrote to his children. (ECF No. 1-3 at 4). But Prater alleges that "he has two standing court orders that authorized him to contact his children[,]" which he contends "supersedes any [prison] order and/or policy." (*Id.*). Prater also alleges that he received an initial misconduct hearing on July 25, 2016, during which he argued that "both court orders superseded" SCI Houtzdale's authority. (*Id.* at 4–5). Prater avers that the hearing was postponed to allow him to provide both orders to SCI Houtzdale. (*Id.* at 5).

Prater next alleges that he sent "an Informal Resolution request" to Defendant Reifer, a Superintendent Assistant at SCI Houtzdale, in an attempt to "fix [the] problem of misconduct due to no violation of [the] two standing court orders or institutional rules violation by [Prater]." (*Id.*). In that request, Prater sought help regarding SCI Houtzdale's alleged refusal "to send out any mail" from Prater "addressed to [his] children[.]" (ECF No. 1-12).

Prater then avers that at a second misconduct hearing on August 3, 2016, he was "found guilty of misconduct" and "forced" into the Restricted Housing Unit ("RHU"). (ECF No. 1-3 at

5).[2] By Prater's telling, while in the RHU, he filed an appeal of the misconduct decision on August 3, 2016. (*Id.*). Prater also alleges that he "filed an appeal to final review" to Defendant Dupont, the Chief Hearing Examiner, on August 15, 2016. (*Id.*).

Prater's Complaint next contends that on August 8, 2016, after he was transferred to the RHU, he "received his personal property in which things w[ere] missing," and "then filed a grievance which was denied." (*Id.*). That grievance, which is attached to Prater's Complaint, generally complains of "missing property" that Prater allegedly did not receive in the RHU. (ECF No. 1-15).

Prater also avers that he filed "a grievance about denial of access to the court and due process violation, due to the denial of personal legal material" on August 15, 2016. (ECF No. 1-3 at 6). In that grievance, Prater alleges that he had an August 5, 2016, deadline to file a brief in the Pennsylvania Supreme Court, but "due to the denial of [his] legal material, [he] was unable to meet that deadline[,] causing a major injury of being time barred from the case." (ECF No. 1-18). It is not clear from Prater's Complaint or the attached grievance what matter before the Pennsylvania Supreme Court he is referring to.

At a certain point, Prater's Complaint shifts its focus from the alleged issues with contacting his children, receiving his property, and access to legal material, to an injury he sustained while incarcerated. (*See* ECF No. 1-3 at 5–6). Prater alleges that while attempting to get out of his top bunk on July 27, 2016, he injured his right leg. (*Id.* at 5). According to Prater, he went to emergency medical treatment and was diagnosed with a torn right Achilles tendon. (*Id.*).

---

[2] Although Prater's Complaint states that a copy of the August 3, 2016, misconduct hearing decision is attached as Exhibit H, (ECF No. 1-3 at 5), Exhibit H contains the Disciplinary Hearing Report for what Prater alleges was his first misconduct hearing on July 25, 2016, (ECF No. 1-13).

Prater avers that on August 31, 2016, while in the RHU, he was scheduled for surgery to fix his torn Achilles tendon. (*Id.* at 6). That morning, Prater claims he asked Defendants Dufore and Flora—both Corrections Officers at SCI Houtzdale—to take a shower before surgery, but they declined his request even after Prater allegedly told them that it was "shower day" in the RHU. (*Id.*).

According to Prater, an hour later, Defendants Long and Maines, also Corrections Officers, arrived in the RHU to transport Prater to surgery. (*Id.*). Prater again asked these Defendants for a shower and to call Defendant James, a Lieutenant at SCI Houtzdale, "about two RHU officers['] refusal to give [Prater] a shower on shower day and before surgery." (*Id.*). Prater alleges that Defendant James and Defendant Barns, a Physician Assistant at SCI Houtzdale, then came to the RHU to see him. (*Id.*). Prater contends that he informed Defendants James and Barns that it was shower day, and that a shower before surgery would be appropriate. (*Id.*).

By Prater's telling, Defendants Barnes and James told him that he was "refusing surgery[,]" which Prater contested, arguing that he did not sign any papers refusing surgery, which is required by SCI Houtzdale's policy. (*Id.*). Prater avers that his surgery was canceled, "and any refusal documents submitted or signed [are] clearly manipulated by Defendants to cover up their illegal actions of cancelling [his] surgery[.]" (*Id.*).

Prater contends that he filed two grievances—one on August 31, 2016, and one on September 2, 2016—regarding his surgery being cancelled, which he alleges shows "deliberate indifference to a serious medical need." (*Id.* at 7). Prater attached SCI Houtzdale's response denying his grievance to his Complaint. (ECF No. 1-20). That document alleged that Prater told staff that he would not go to surgery if he were not afforded a shower, even after staff told Prater

that (1) a shower was not necessary and (2) he could raise any hygiene concerns with the medical staff conducting his procedure. (*Id.*).

Prater also alleges that he filed a grievance "in reference to being charged for medical co-pay about ongoing medical problems and rescheduling of surgery" on September 19, 2016. (ECF No. 1-3 at 7). That grievance, attached to Prater's Complaint, shows that Prater complained of two medical charges that he argued were improper. (ECF No. 1-21).

Also on September 19, 2016, Prater alleges that Defendant Cogan filed a "false misconduct against" him. (ECF No. 1-3 at 7). The Misconduct Report attached to Prater's Complaint alleges that Prater (1) threatened an employee and (2) used abusive, obscene, or inappropriate language while speaking to an employee. (ECF No. 1-22). Prater also attaches the Disciplinary Hearing Report to his Complaint, which shows that he was found guilty of the alleged misconduct. (*Id.*). Prater appealed that decision, but his appeal was rejected. (*Id.*).

Next, Prater alleges that his second surgery was cancelled on September 16, 2016, "due to staff feeding [him] before surgery." (ECF No. 1-3 at 7). He contends that he was given two meals but "was never told by any staff about surgery and not to eat food." (*Id.*). On September 27, 2016, Prater filed a grievance "about cancellation of second surgery and the intentional infliction of unnecessary and wanton pain[,]" which he attached to his Complaint. (*Id.*); (ECF No. 1-23). That grievance alleged that prison staff intentionally fed Prater to harm him and sabotage his surgery. (ECF No. 1-23). Prater's grievance was denied on October 13, 2016; the Initial Review Response attached to Prater's Complaint claims that Prater was notified that he was not to eat or drink prior to his surgery. (*Id.*). Prater appealed that decision, but the initial response was upheld. (*Id.*).

Prater then refers to "three complaints" he filed on October 31, 2016, "in reference to being given a known pain medication [he] is allergic to[] by" Defendant Jury, an SCI Houtzdale nurse, which Prater claims "could have killed" him. (ECF No. 1-3 at 7). Prater attached these "complaints" as exhibits to his own Complaint. (ECF No. 1-24). Prater alleged in these three documents (each entitled "Request to Staff Member") that Defendant Naji, the medical director at SCI Houtzdale, made an "attempt on [Prater's] life" by "intentionally giving [him] the wrong medication[.]" (*Id.*). Prater also demanded that he be put in contact with State Police to file charges. (*Id.*).

Next, Prater points to two grievances he filed on November 5, 2016. (ECF No. 1-3 at 7). By Prater's telling, "[o]ne grievance was about [him] falling in [his] cell after surgery and not being seen by a medical nurse Defendant Rich or Richard, [as] he only looked through [Prater's] cell door [and] never check[ed] for injury." (*Id.*). In that same grievance, Prater alleged that "the in cell emergency button was intentionally cut off and [he] had to get the inmate in the next cell to get him help from staff." (*Id.* at 7–8).

Prater avers that the "second grievance was about being put in a filthy and unsanitary cell having an open wound causing a risk of infection." (*Id.* at 8). As the exhibits to Prater's Complaint show, both grievances were denied, and those denials were subsequently upheld on appeal. (ECF No. 1-25).

Prater's Complaint then circles back to the issues surrounding his pain medication. (ECF No. 1-3 at 8). Prater alleges that on November 8, 2016, he filed a grievance "about the denial of adequate pain medication and the attempt on [his] life with giving pain medication he's allergic too." (*Id.*). He also avers that he "was only given prescribed pain medication for two days after

surgery to [his] right [A]chille[s] tendon and removal of right big toe ligament that was use[d] to reattach [his] [A]chilles tendon." (*Id.*). Prater's grievance was denied, and his subsequent appeal was rejected. (ECF No. 1-26).

In terms of factual allegations, Prater's Complaint closes by outlining two grievances he filed on December 18, 2016. (ECF No. 1-3 at 8). Prater explains that his first grievance was "about falling on [a] walk way[,]" which allegedly led to him injuring his right knee and toes, and how the walk ways were not safe to walk on "with crutches due to poor snow removal[.]" (*Id.*). That grievance, attached to Prater's Complaint, alleged that Prater fell on December 10, 2016. (ECF No. 1-27).

In the second grievance, Prater claims that he fell on December 14, 2016, in a "housing unit due to no wet floor cau[]tion signs being posted or visible on wet floors." (ECF No. 1-3 at 8). Prater alleges that as a result of that fall, he "hurt his entire left side while on crutches." (*Id.*). Prater avers that his second grievance "also addressed the issue of being moved from E-Unit to D-Unit to the further most unit on the compound intentionally putting [him] in harm['s way." (*Id.*).

The exhibits attached to Prater's Complaint show that his first grievance was upheld in part and denied in part. (ECF No. 1-27). Specifically, the Initial Review Response upheld the fact that Prater fell but determined that "there [were] no findings for the medical issue [Prater was] grieving." (*Id.*). Prater appealed, but the Initial Review Response was upheld. (*Id.*). Prater's second grievance was denied, and that denial was upheld on appeal. (ECF No. 1-28).

Finally, Prater claims that the exhibits presented along with his Complaint "show[] Defendants['] clear [d]eliberate [i]ndifference to [his] serious medical need[.]" (ECF No. 1-3 at 8).

He also alleges that Defendants "caused significant injury and the unnecessary and wanton infliction of pain." (*Id.*). Prater specifically avers that "Defendants [forced] him to travel the institution in hazardous conditions knowing it's unsafe to walk with crutches and refused to correct any of the problems addressed in filing grievances making the grievance procedure unavailable to [him]." (*Id.* at 8–9). Prater also states that due to his "indigent status[,]" "all exhibits and evidence [are] not being submitted[,]" and he asks the Court to allow him "to amend after funds are [obtained.]" (*Id.* at 9).

In terms of Prater's legal claims, he generally alleges that the aforementioned events violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. (ECF No. 1-3 at 2).

**B.      The Magistrate Judge's Orders and Prater's Appeal to the Third Circuit**

The Magistrate Judge denied Prater's Motion for Leave to Proceed IFP on February 8, 2019. (ECF No. 2). The Magistrate Judge explained that Prater

> has been a plaintiff several times in the United States District Court for the Eastern District of Pennsylvania, including in *Prater v. City of Philadelphia Family Court*, Case No. 2:12-cv-3423-CDJ (E.D. Pa. October 12, 2013), *aff'd* No. 13-4346 (3d Cir. June 16, 2014) (*per curiam*); and *Prater v. Wetzel*, Case No. 2:14-cv-3395-CDJ (E.D. Pa. May 27, 2015), *aff'd* No. 15-2433 (3d Cir. Dec. 7, 2015) (*per curiam*).

(*Id.* at 1).

According to the Magistrate Judge, those "two actions . . . comprise four actions or appeals that count as 'strikes' under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g)," (*id.*), which precludes an inmate from bringing a civil action if, while incarcerated, the inmate previously brought three "action[s] or appeal[s]" that were dismissed because they were frivolous, malicious, or failed to state a claim upon which relief could be granted—unless the inmate

demonstrates that he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g). The Magistrate Judge attached the "relevant opinions" as exhibits to his Order. (ECF Nos. 2-1, 2-2, 2-3, 2-4). "Prater is not excused from the three strikes provision of [§] 1915(g)[,]" the Magistrate Judge found, "because he does not allege facts that would indicate that he is in imminent danger of serious physical injury from any [D]efendant." (ECF No. 2 at 2).

The Magistrate Judge also found that Prater violated Federal Rule of Civil Procedure 20(a)(2) by "attempt[ing] to present in one complaint two distinct claims based on sets of facts that have only [Prater] as their common thread[.]" (*Id.*). The Magistrate Judge described Prater's first claim as some Defendants interfering with Prater's right to communicate with his children and his second claim as other Defendants violating his rights with respect to medical care based on his injured Achilles tendon. (*Id.*). Because Rule 20 does "not give license to join unrelated claims and defendants in one lawsuit[,]" the Magistrate Judge concluded that Prater's Complaint runs afoul of that Rule. (*Id.*). The Magistrate Judge concluded by stating that although Prater's Motion to Proceed IFP was denied, he "may upon payment of the full filing fee file one or more complaints complying with Rule 20." (*Id.*).

On February 28, 2019, the Magistrate Judge issued a Memorandum Order dismissing Prater's Complaint without prejudice "for failure to prosecute (failure to pay the filing fee)." (ECF No. 3) (citing *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984)). That Order instructed the Clerk to mark Prater's case as closed. (*Id.*).

Prater filed a Notice of Appeal "to the United States Court[] of Appeals for [t]he Third Circuit" on March 29, 2019, appealing from the Magistrate Judge's Order dismissing his case.

(ECF No. 4). The Third Circuit granted Prater's Motion to Proceed IFP on May 2, 2019. (ECF No. 6).

On appeal, the Third Circuit consolidated Prater's appeal with two others and issued a precedential opinion on August 2, 2023. *Prater v. Dep't of Corr.*, 76 F.4th 184 (3d Cir. 2023).[3] The court ultimately "dismiss[ed] Prater's appeal for lack of jurisdiction because all parties did not consent and, therefore, the [M]agistrate [J]udge lacked the power to involuntarily dismiss the case." *Id.* at 190.

The Third Circuit explained that, pursuant to 28 U.S.C. § 636, "absent party consent, a magistrate judge's jurisdiction extends only to nondispositive pretrial matters." *Id.* at 194. Turning to Prater's appeal, the court held that because Prater's IFP Motion was "a nondispositive pretrial matter," the Magistrate Judge's denial of that Motion does not "become final and appealable to our Court … until after being objected to by the dissatisfied party and reviewed by the district court." *Id.* at 197. Because Prater appealed directly to the Third Circuit, with no intermediary review by this Court, the Third Circuit concluded that it had "no authority to review the [M]agistrate [J]udge's denial of Prater's IFP [M]otion until after Prater seeks review in the district court." *Id.* at 198.

The Third Circuit also found that the Magistrate Judge "lacked jurisdiction to involuntarily dismiss Prater's case[.]" *Id.* at 201. The court explained that because "not all named defendants in Prater's case provided express or implied consent" to the Magistrate's Judge's jurisdiction, the Magistrate Judge's "authority was restricted by the limits of § 636(b) and

---

[3] The Third Circuit's Judgment was docketed at Prater's case before this Court on October 6, 2023, (ECF No. 23), and the Third Circuit's Mandate was docketed on October 12, 2023, (ECF No. 24).

permitted him only to submit a recommended disposition to the district court." *Id.* at 199. Thus, the Third Circuit held that the Magistrate Judge's involuntary dismissal of Prater's Complaint for failure to prosecute was statutorily improper. *Id.*

In terms of next steps, the court explained that its dismissal of Prater's appeal "simply means Prater must seek review of the [M]agistrate [J]udge's non-final, non-binding order in the district court, where his claim will be finally adjudicated by an Article III official." *Id.* at 203.

### C.    Prater's Objections to This Court

Shortly after the Third Circuit issued its opinion, on August 18, 2023, Prater filed a "Notice of Appeal and Objection to Recomme[n]dation of Magistrate Judge[.]" (ECF No. 20). There, he identified a "minor clerical error that caused delays in review by This Honorable District Court"—namely, Prater accidentally addressed his appeal of the Magistrate Judge's Order dismissing his Complaint to the Third Circuit. (*Id.* at 1).

Prater goes on to argue that he was in imminent danger of serious physical injury in 2019 when he filed his initial Complaint along with his Motion to Proceed IFP, such that the PLRA's three-strikes provision should not have necessitated the denial of his Motion. (*Id.* at 2). He also asserts that, contrary to the Magistrate Judge's conclusion, his Complaint complied with the mandates of Rule 20(a)(2) because the claims he presents arise out of the same series of transactions or occurrences. (*Id.* at 2–3).[4]

---

[4] The day after Prater filed his "Notice of Appeal and Objection to Recomme[n]dation of Magistrate Judge[,]" (ECF No. 20), the Magistrate Judge issued an Order explaining that the Third Circuit's Mandate had not yet issued. (ECF No. 21). The Magistrate Judge explained that "[w]hen the mandate is received the Clerk shall re-open this matter and assign it to a district judge with the reference back to me." (*Id.* at 2). Moreover, the Magistrate Judge interpreted Prater's filing at ECF No. 20 "as an appeal of a nondispositive order to a district judge[,]" the same as this Court does.

On September 1, 2023, Prater also filed a sealed exhibit containing medical records he alleges are evidence of the imminent danger he faces while incarcerated. (ECF No. 22).

Prater then filed a Motion to Appoint Counsel on December 7, 2023. (ECF No. 25). He argues that (1) he is unable to afford counsel, (2) his imprisonment and alleged retaliation by prison staff greatly limit his ability to "litigate this complex and intricate case[,]" and (3) the appointment of counsel would allow for the "expeditious movement of this case … forward[.]" (*Id.* at 1–2).

The Magistrate Judge denied Prater's Motion on December 13, 2023. (ECF No. 26). He explained that Local Civil Rule 10(C) mandates that absent special circumstances, no motions for the appointment of counsel will be granted until after dispositive motions have been resolved. (*Id.*). The Magistrate Judge found no special circumstances and noted that Prater's appeal was pending before this Court. (*Id.*). He also stated that Prater "is completely ineligible for appointed counsel … unless he convinces the Court that he qualifies under the 'imminent danger of serious physical injury' exception to the three strikes rule." (*Id.*).

Prater objected to that decision by the Magistrate Judge on December 29, 2023. (ECF No. 27). Prater complains of an alleged "continuous an[d] apparent bias" against him by the Magistrate Judge. (*Id.* at 1). But Prater makes no argument of substance regarding his Motion to Appoint Counsel other than his assertion that the Magistrate Judge is "stym[i]eing this case again with his bias[ed] decision[.]" (*Id.* at 1–7). Instead, Prater mainly outlines his alleged issues with prison staff and doubles down on his contention that he is in immediate danger. (*Id.*).

III.    **Discussion**

A.     **Prater's Objections to the Magistrate Judge's Order Denying His Motion to Proceed IFP**

The Third Circuit made clear that the Magistrate Judge's Order denying Prater's Motion to Proceed IFP was an Order on a nondispositive matter. *Prater*, 76 F.4th at 198–99. Pursuant to § 636(b)(1)(A), a district court may refer a nondispositive motion to a magistrate judge "to hear and determine[.]" 28 U.S.C. § 636(b)(1)(A).

"Following a magistrate judge's issuance of an order on a nondispositive matter, the parties may serve and file objections to the order within 14 days of being served with a copy of the order." *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (citing Fed. R. Civ. P. 72(a)). "If a party objects to a magistrate judge's order regarding a nondispositive matter, the district court 'must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Id.* (quoting Fed. R. Civ. P. 72(a)). That standard requires the district court "to review findings of fact for clear error and to review matters of law de novo." *Id.*

Here, however, Prater's objections to the Magistrate Judge's Order denying his Motion to Proceed IFP were not timely made. Prater's objections addressed to this Court were filed on August 18, 2023, (ECF No. 20), over three years after the Magistrate Judge denied his Motion for IFP on February 8, 2019, (ECF No. 2).[5]

Federal Rule of Civil Procedure 72 only requires the Court to "consider timely objections" and explains that a "party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a). However, Local Civil Rule 72(C)(2) provides that, with respect to

---

[5] Even if the Court were to construe Prater's Notice of Appeal to the Third Circuit as an objection to the Magistrate Judge's Order intended for this Court, that Notice of Appeal was filed forty-nine days after the Magistrate Judge's Order denying Prater's Motion to Proceed IFP. (*See* ECF No. 4-3).

nondispositive pretrial matters handled by magistrate judges, this Court "may [] reconsider any matter *sua sponte*." W.D. Pa. LCvR 72(C)(2). Because, as the Court will explain, the Magistrate Judge's denial of Prater's Motion to Proceed IFP is fundamentally intertwined with the Magistrate Judge's Order dismissing Prater's Complaint—which the Court must review in light of Prater's objections—the Court exercises its discretion to reconsider the Magistrate Judge's denial of Prater's IFP Motion *sua sponte. Id.*

### 1.   The "Strikes" Against Prater Identified by the Magistrate Judge Pursuant to § 1915(g)

As previously noted, the Magistrate Judge denied Prater's Motion because he found that "two actions" previously filed by Prater "comprise four actions or appeals that count as 'strikes' under the" PLRA's § 1915(g). (ECF No. 2 at 1). That provision provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The Court begins and ends its review with the Magistrate Judge's initial calculation of Prater's "strikes" under the PLRA.

In denying Prater's Motion to Proceed IFP, the Magistrate Judge pointed to: (1) a 2013 case filed by Prater in the Eastern District of Pennsylvania and (2) a 2015 case filed by Prater in the same District. (ECF No. 2 at 1) (citing *Prater v. Welkie*, No. 12-CV-3423, 2013 WL 12099667 (E.D. Pa. Oct. 2, 2013); *Prater v. Wetzel*, No. 14-CV-3395, 2015 WL 3421544 (E.D. Pa. May 27, 2015)). In

both cases, the court granted the defendants' Rule 12(b)(6) motion and dismissed Prater's complaint. *Welkie*, 2013 WL 12099667, at *1 n.1; *Wetzel*, 2015 WL 3421544, at *21–22.

Prater subsequently appealed both decisions. *Prater v. City of Phila. Family Court*, 569 F. App'x 76, 78 (3d Cir. 2014); *Prater v. Wetzel*, 629 F. App'x 176, 177 (3d Cir. 2015). As the Magistrate Judge noted, the Third Circuit affirmed the district court's dismissal in both instances. *City of Phila. Family Court*, 569 F. App'x at 80; *Wetzel*, 629 F. App'x at 179.

The Magistrate Judge found that the "two actions mentioned above" (the *Welkie* and *Wetzel* actions) "comprise[d] four actions or appeals"—two dismissals by the district court and two affirmances by the Third Circuit—that count as "strikes" under the PLRA. (ECF No. 2 at 1). However, as the Third Circuit has explained, "'[u]nder the plain language of the [PLRA], only a dismissal may count as a strike, not the affirmance of an earlier decision to dismiss.'" *Ball v. Famiglio*, 726 F.3d 448, 464 (3d Cir. 2013) (quoting *Jennings v. Natrona Cnty. Det. Med. Facility*, 175 F.3d 775, 780 (10th Cir. 1999)). Put differently, "a dismissal of an appeal on one of the enumerated grounds counts as a PLRA strike, while an affirmance of a district court's dismissal does not, even if the underlying dismissal itself counts as a strike." *Id.*

Thus, while the dismissals of Prater's *Welkie* and *Wetzel* actions by the district court may count as PLRA strikes, the subsequent affirmances of those dismissals by the Third Circuit do not. Because the Magistrate Judge only identified two actions that could constitute PLRA strikes against Prater, it was improper to deny Prater's Motion to Proceed IFP on the basis that the identified actions triggered § 1915(g)'s preclusive effect. The Court will therefore reverse the Magistrate Judge's Order at ECF No. 2, insofar as it denies Prater's Motion on PLRA strike

grounds.[6] The Court will therefore refer the matter of Prater's IFP Motion back to the Magistrate Judge to be addressed in the first instance, subject to the Court's analysis above.

> ### 2.   Whether Prater's Complaint Complies with Federal Rule of Civil Procedure 20(a)(2)

In denying Prater's Motion to Proceed IFP, the Magistrate Judge also found that Prater's Complaint violated Federal Rule of Civil Procedure 20(a)(2). (ECF No. 20 at 2–3). Specifically, the Magistrate Judge found that Prater

> attempts to present in one complaint two distinct claims based on sets of facts that have only [Prater] as their common thread: (1) some defendants interfered with his right to communicate with his children by not accepting that his version of a PFA order permitted him to contact them, and by issuing him a disciplinary citation when he did attempt to contact them; and (2) other defendants violated his rights to medical care because his surgery for a torn Achilles tendon was twice delayed, and because on one occasion he was given a pain reliever that he was allergic to.

(ECF No. 2 at 2) (internal citation omitted).

Because Prater's Complaint "lumped together" unrelated claims that "do not share common questions of law or fact, or do not arise out of the same series of occurrences," the Magistrate Judge concluded that it ran afoul of Rule 20(a)(2). (ECF No. 2 at 3).

Rule 20(a)(2) allows a plaintiff to join multiple defendants in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

---

[6] Because the Court finds that the Magistrate Judge did not identify three "strikes" against Prater under § 1915(g), the Court need not and does not analyze the propriety of the Magistrate Judge's conclusion that Prater did "not allege facts that would indicate that he is in imminent danger of serious physical injury from any [D]efendant." (ECF No. 2 at 2).

The requirements of Rule 20(a) "are to be liberally construed in the interest of convenience and judicial economy." *Whitehead v. Wetzel*, No. 14-CV-51, 2015 WL 4662563, at *1 (W.D. Pa. Aug. 6, 2015). "However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit." *Rouse v. Starks*, No. 16-CV-3422, 2018 WL 707943, at *5 (D. N.J. Feb. 2, 2018).

Though the Court is mindful, as the Magistrate Judge was, of the wide latitude given to pro se plaintiffs like Prater, the Court ultimately agrees with the Magistrate Judge's conclusion that the Complaint attached to Prater's Motion to Proceed IFP, (ECF No. 1-3), would be violative of Rule 20(a)(2). At bottom, Prater's Complaint fails to (1) properly link all thirty-two named Defendants and (2) show that any question of law or fact common to all Defendants will arise in this action.

By way of example, Prater's claim that Defendants such as Cogan and Reifer improperly interfered with his ability to contact his children, (ECF No. 1-3 at 4), bears no relation to Prater's claim that Defendants such as Flora and Barns improperly acted to delay his surgery for a torn tendon, (*id.* at 5), even if those incidents occurred only months apart. And neither of those claims appear to arise out of the same transaction or occurrence as Prater's claim that he did not receive much of his personal property when he was transferred to the RHU, (*id.*), or his claim that he twice fell on prison property due to unsafe conditions, (*id.* at 8).

Accordingly, because the Complaint included with Prater's Motion to Proceed IFP fails to proffer sufficient factual allegations supporting the contention that the various actions and events complained of constitute a single unified transaction or occurrence, the Court affirms the Magistrate Judge's conclusion that Prater's Complaint runs afoul of Rule 20(a)(2). Given the

Court's affirmance on this score, the Magistrate Judge may of course apply Rule 20 as he deems appropriate in reconsidering Prater's IFP Motion.

**B.      Prater's Objections to the Magistrate Judge's Order Dismissing His Complaint**

Prater also objects to the Magistrate Judge's Order dismissing his Complaint without prejudice "for failure to prosecute (failure to pay the filing fee)." (ECF No. 3); (ECF No. 20 at 1).

Unlike the Magistrate Judge's Order denying Prater's Motion to Proceed IFP, the Third Circuit explained that because "not all named defendants in Prater's case provided express or implied consent[,]" the Magistrate Judge did not have jurisdiction to dismiss Prater's case for failure to prosecute. *Prater*, 76 F.4th at 198. Instead, "[h]is authority was restricted by the limits of § 636(b) and permitted him only to submit a recommended disposition to the district court." *Id.* This led the Third Circuit to conclude that "either the [M]agistrate [J]udge's order must be reviewed by the district court or incorporated into a subsequent final order … or adopted by the district court … before we have the power to act on it in any way." *Id.* at 202.

Accordingly, the Court treats the Magistrate Judge's Order dismissing Prater's Complaint as a recommended disposition to this Court pursuant to § 636(b)(1)(B). *See id.* at 203 ("Prater must seek review of the magistrate judge's non-final, non-binding order [dismissing his case] in the district court, where his claim will be finally adjudicated by an Article III official.").

Section 636(b)(1) provides that any party may serve and file written objections to a magistrate judge's recommendation within fourteen days after being served with a copy. Even if the Court were to construe Prater's appeal of the Magistrate Judge's Order to the Third Circuit as objections thereto, Prater filed his appeal twenty-four days after he alleged he received the

Magistrate Judge's Order, (ECF No. 4-3); (ECF No. 20-1 at 3), which falls outside the ambit of the period in which this Court allows non-registered ECF users (like Prater) to file timely objections.

"If a party does not object timely to a magistrate judge's report and recommendation, the party may lose its right to de novo review by the district court." *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017). But even absent timely objections to a report and recommendation, the Court must "afford some level of review to dispositive legal issues raised by the report." *Id.* (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987). The Third Circuit has described this level of review as "reasoned consideration." *Id.* Thus, the Court reviews the Magistrate Judge's Order dismissing Prater's Complaint under this reasoned consideration standard.

The Magistrate Judge's dismissal of Prater's Complaint is closely intertwined with the Magistrate Judge's denial of Prater's Motion to Proceed IFP, which the Court has already found improper. *See supra* Section III.A.1. Indeed, the Magistrate Judge's sole stated reason for dismissing Prater's Complaint—failure to prosecute his case by failing to pay the filing fee—was only pertinent because the Magistrate Judge previously denied Prater's Motion to Proceed IFP. (*See* ECF No. 2 at 3) ("[Prater's] motion to proceed *in forma pauperis* is denied. Plaintiff may upon payment of the full filing fee file one or more complaints complying with Rule 20.").

Because the Magistrate Judge's dismissal of Prater's Complaint was predicated on the previous, erroneous finding that Prater was not entitled to proceed IFP pursuant to the PLRA's three-strikes provision, the Court finds that dismissal improper. Accordingly, the Court grants Prater's objections, insofar as he objects to the Magistrate Judge's dismissal of his Complaint on PLRA grounds, and therefore reverses the Magistrate Judge's Order at ECF No. 3.

C.      Prater's Objections to the Magistrate Judge's Order Denying His Motion for
        Appointment of Counsel

In Prater's second filing pending before the Court, he appears to object to the Magistrate

Judge's Order denying his Motion for Appointment of Counsel. (ECF No. 27).

Prater filed a "Motion for Appointment of Counsel" on December 7, 2023. (ECF No. 25).

In that Motion, Prater argued, *inter alia*, that he cannot afford counsel and his "imprisonment will

greatly limit his ability to litigate this complex and intricate case." (*Id.* at 1). The Magistrate Judge

denied Prater's Motion on December 13, 2023. (ECF No. 26). As the Magistrate Judge explained,

Local Civil Rule 10(C) provides that "'[a]bsent special circumstances, no motions for the

appointment of counsel will be granted until after dispositive motions have been resolved.'" (ECF

No. 26) (quoting W.D. Pa. LCvR 10(C)). Because, at the time Prater filed his Motion, his appeal of

the Magistrate Judge's dismissal of his Complaint was still pending before this Court, the

Magistrate Judge found that Rule 10(C) precluded granting Prater's Motion, as there were no

special circumstances present. (*Id.*).

On December 29, 2023, Prater filed a document entitled "Urgent Attention[,]" which was

docketed as an Appeal of the Magistrate Judge's Decision to this Court. (ECF No. 27). Much of

the argument found in that filing relates to the Magistrate Judge's previous conclusion that the

PLRA precluded Prater from proceeding IFP, which the Court has already addressed. (*Id.* at 1–2);

*see supra* Section III.A.1. Prater mentions his Motion for Appointment of Counsel, but makes no

substantive argument on that score, save his allegation that the Magistrate Judge "is stym[i]eing

this case again with his bias[ed] decision[.]"[7] (ECF No. 27 at 2).

---

[7] Prater also takes aim at the following statement the Magistrate Judge made in denying Prater's Motion
for Appointment of Counsel: "[Prater's] appeal to the Court is, after a detour to the Court of Appeals,

To the extent Prater intended to object to the Magistrate Judge's decision to deny his Motion for Appointment of Counsel, the Court will deny that objection. Prater's Motion was a nondispositive pretrial motion, and the Magistrate Judge had jurisdiction to rule on that Motion pursuant to § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a). Accordingly, Prater was permitted to "file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a).

The Magistrate Judge's Order was filed on December 13, 2023. (ECF No. 26). Prater filed what could reasonably be interpreted as an objection to that Order on December 29, 2023. (ECF No. 27-3). There is no indication on the docket as to when Prater was served with a copy of the Magistrate Judge's Order. If Prater was served a copy of the Magistrate Judge's Order on December 14, his objections would have been filed fifteen days afterwards and therefore be untimely. In that case, the Court could only review the Magistrate Judge's Order by exercising its discretion to review a matter *sua sponte* under Local Civil Rule 72(C)(2). But if Prater was served a copy on December 15 or later, then his objections were filed within the fourteen-day time frame contemplated by Rule 72. Because the Court's conclusion remains the same in any event, the Court will give Prater the benefit of the doubt and treat his objections as timely.

When a party timely objects to a magistrate judge's nondispositive order, the Court must consider those objections "and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A finding is clearly erroneous "when although there

---

currently pending." (ECF No. 26). By Prater's telling, this is a "blatant misrepresentation of the facts" because the Magistrate Judge knew that his "appeal [was] over[.]" (ECF No. 27 at 1). But it is clear that the Magistrate Judge was referring to Prater's appeal to *this* Court, which was indeed pending at the time the Magistrate Judge denied Prater's Motion—not his previous appeal to the United States Court of Appeals to the Third Circuit.

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

Applying this standard, the Court concludes that the Magistrate Judge properly denied Prater's Motion for Appointment of Counsel. The Magistrate Judge appropriately invoked Local Civil Rule 10(C), which provides that, with respect to pro se civil rights actions by incarcerated individuals, "no motions for the appointment of counsel will be granted until after dispositive motions have been resolved[,]" absent "special circumstances." W.D. Pa. LCvR 10(C). At the time Prater filed his Motion for Appointment of Counsel (and as of this Opinion's writing), no discovery has been conducted with respect to Prater's case, and no deadline has been set for the filing of dispositive motions.

Because the record does not reflect any special circumstances warranting the appointment of counsel, the Magistrate Judge properly denied Prater's Motion as premature. *See Shears v. Mooney*, No. 18-CV-602, 2019 WL 5597275, at *3–4 (W.D. Pa. Oct. 30, 2019) (denying the plaintiff's motion for appointment of counsel pursuant to Local Civil Rule 10(C) where discovery was complete, but dispositive motions were not due until months after the plaintiff's motion was filed). Thus, the Court affirms the Magistrate Judge's conclusion on this score and denies Prater's objections thereto.[8]

---

[8] The Court notes that the Magistrate Judge, in denying Prater's Motion for Appointment of Counsel, also noted that Prater "is completely ineligible for appointed counsel … unless he qualifies under the 'imminent danger of serious physical injury' exception to the three strikes rule." (ECF No. 26) (citing *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011)). But, as previously explained, the Magistrate Judge's initial conclusion that Prater was precluded from proceeding IFP under the PLRA's three-strikes provision was improper based on the actions cited by the Magistrate Judge. *See supra* Section III.A.1. Thus, the Magistrate Judge's statement on this score no longer holds true—at least based on the "four actions" initially offered

An appropriate Order follows:

---

by the Magistrate Judge. (*See* ECF Nos. 2-1, 2-2, 2-3, 2-4). Still, as the Court explains in text, the Magistrate Judge nonetheless properly denied Prater's Motion for Appointment of Counsel pursuant to Local Civil Rule 10(C).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WAYNE PRATER,                          )          Case No. 3:19-cv-19
                                       )
      Plaintiff,                       )          JUDGE KIM R. GIBSON
                                       )
    v.                               )
                                       )
DEPARTMENT OF CORRECTIONS,             )
BARRY R. SMITH, KENNETH                )
HOLLIBAUGH, DAVID CLOSE,               )
REBECCA REIFER, MICHELL IVICIC,        )
JANET PEARSON, DR. MUHAMMAD            )
NAJI, JOSEPH H. DUPONT, JOSEPH J.      )
SILVA, ADREN SMITH, FREDDY             )
NUNEZ, DORINA VARNER, KERI             )
MOORE, JOEL BARROWS, K. SHEA, T.       )
KNOWLES, CO 1 MOONEY, C.O. KELLY,      )
CHIEF JAMES, PEGGY BARNS,              )
ELIZABETH JURY, RICHARD OR RICH,       )
DAREN GINTER, WILLIAM NORVELL,         )
POBORSKI, LARUE, G. COGAN,             )
DUFORE, FLORA, MR. MAINES, and         )
LONG,                                  )
                                       )
      Defendants.                      )

### ORDER

AND NOW, this _____22ⁿᵈ_____ day of July, 2024, upon consideration of Plaintiff Wayne

Prater's "Notice of Appeal and Objection to Recomme[n]dation of Magistrate Judge[,]" (ECF No.

20), it **HEREBY ORDERED** as follows:

    A.  Pursuant to the Court's discretion to reconsider any nondispositive pretrial matter *sua*

        *sponte* under Local Civil Rule 72(C)(2), the Order at ECF No. 2 is: (1) **REVERSED**, insofar

as that Order denied Prater's Motion to Proceed In Forma Pauperis pursuant to the PLRA's three-strikes provision based on the actions cited by the Magistrate Judge therein; and (2) **AFFIRMED**, insofar as that Order concluded that Prater's Complaint violated Federal Rule of Civil Procedure 20(a)(2). As the Court explained above, it refers this matter back to the Magistrate Judge to reconsider Prater's IFP Motion in light of the Court's analysis above.[9]

B. Prater's objections at ECF No. 20 are **GRANTED**, insofar as he objects to the Magistrate Judge's Order at ECF No. 3 dismissing his Complaint for failure to pay the filing fee, and the Order at ECF No. 3 is therefore **REVERSED.**

**IT IS FURTHER ORDERED** that, upon consideration of Plaintiff Wayne Prater's objections to the Magistrate Judge's Order denying his Motion for Appointment of Counsel, (ECF No. 27), said objections are **DENIED**, and the Magistrate Judge's Order at ECF No. 26 is **AFFIRMED,** insofar as that Order denied Prater's Motion pursuant to Local Civil Rule 10(C).

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**

---

[9] The Court stresses, as it has alluded to throughout its Opinion, that its analysis does not mean that the PLRA's three-strikes provision cannot preclude Prater from proceeding IFP, so long as the requirements of § 1915(g) are satisfied. The Court only concludes that the actions cited by the Magistrate Judge in denying Prater's Motion, (ECF Nos. 2-1, 2-2, 2-3, 2-4), do not amount to three strikes under the PLRA and relevant caselaw.